1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KRISTOFFER MORRIS,

               Petitioner,

    v.

R. LOPEZ,

               Respondent.

)  1:12-cv—01363-BAM-HC
)
)  ORDER DISMISSING THE PETITION
)  WITHOUT LEAVE TO AMEND (Doc. 1)
)
)  ORDER DECLINING TO ISSUE A
)  CERTIFICATE OF APPEALABILITY
)
)  ORDER DIRECTING THE CLERK TO
)  CLOSE THE CASE
)
)

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting consent in a signed writing filed by Petitioner on September 4, 2012 (doc. 6).  Pending before the Court is the petition, which was filed on August 21, 2012.

    I.  <u>Legal Standards</u>

        A.  <u>Screening the Petition</u>

Rule 4 of the Rules Governing § 2254 Cases in the United

States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  Hendricks v. Vasquez, 908 F.2d at 491.

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

///

B.   Review under 28 U.S.C. § 2254(d)

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).  It is thus the governing legal principle or principles set forth by the Supreme Court at the pertinent time. Lockyer v. Andrade, 538 U.S. 71-72.

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of

facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court
need not have cited Supreme Court precedent or have been aware of
it, "so long as neither the reasoning nor the result of the
state-court decision contradicts [it]."  Early v. Packer, 537
U.S. 3, 8 (2002).  A state court unreasonably applies clearly
established federal law if it either 1) correctly identifies the
governing rule but then applies it to a new set of facts in a way
that is objectively unreasonable, or 2) extends or fails to
extend a clearly established legal principle to a new context in
a way that is objectively unreasonable.  Hernandez v. Small, 282
F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.
An application of clearly established federal law is unreasonable
only if it is objectively unreasonable; an incorrect or
inaccurate application is not necessarily unreasonable.
Williams, 529 U.S. at 410.

     A state court's determination that a claim lacks merit
precludes federal habeas relief as long as it is possible that
fairminded jurists could disagree on the correctness of the state
court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct.
770, 786 (2011).  Even a strong case for relief does not render
the state court's conclusions unreasonable.  Id.  In order to
obtain federal habeas relief, a state prisoner must show that the
state court's ruling on a claim was "so lacking in justification
that there was an error well understood and comprehended in
existing law beyond any possibility for fairminded disagreement."
Id. at 786-87.  The standards set by § 2254(d) are "highly
deferential standard[s] for evaluating state-court rulings" which
require that state court decisions be given the benefit of the

1  doubt, and the Petitioner bear the burden of proof.  <u>Cullen v.</u>

2  <u>Pinholster</u>, 131 S. Ct. at 1398.  Further, habeas relief is not

3  appropriate unless each ground supporting the state court

4  decision is examined and found to be unreasonable under the

5  AEDPA.  <u>Wetzel v. Lambert</u>, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

6      In assessing under section 2254(d)(1) whether the state

7  court's legal conclusion was contrary to or an unreasonable

8  application of federal law, "review... is limited to the record

9  that was before the state court that adjudicated the

10  claim on the merits."  <u>Cullen v. Pinholster</u>, 131 S. Ct. at 1398.

11  Evidence introduced in federal court has no bearing on review

12  pursuant to § 2254(d)(1).  <u>Id.</u> at 1400.  Further, 28 U.S.C.

13  § 2254(e)(1) provides that in a habeas proceeding brought by a

14  person in custody pursuant to a judgment of a state court, a

15  determination of a factual issue made by a state court shall be

16  presumed to be correct; the petitioner has the burden of

17  producing clear and convincing evidence to rebut the presumption

18  of correctness.  A state court decision that was on the merits

19  and was based on a factual determination will not be overturned

20  on factual grounds unless it was objectively unreasonable in

21  light of the evidence presented in the state proceedings.

22  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

23      II.  <u>The Petition</u>

24      Petitioner alleges that he is an inmate of the California

25  State Prison at Corcoran, California (CSP-COR), serving two six-

26  year sentences imposed in the Los Angeles Superior Court on July

27  17, 2006, for having committed second degree burglary in

28  violation of Cal. Pen. Code § 459, and in the Orange County

1  Superior Court on September 11, 2008, for having committed
2  assault without a weapon in violation of Cal. Pen. Code
3  § 245.  (Pet., doc. 1, 1.)   Petitioner alleges that he is
4  serving an indeterminate term in the Security Housing Unit (SHU).
5  Petitioner alleges that he is otherwise a minimum custody inmate
6  with a classification score of less than ten points, and he has
7  not been found guilty of a rules violation since 2001, when he
8  removed sugar from the dining hall.  Further, he has never been
9  sanctioned in a rules violation report for gang activity or any
10 other conduct which, if true, could be prosecuted as a
11 misdemeanor or felony.  (Id. at 4.)  Petitioner alleges that when
12 Cal. Pen. Code § 2933.6 took effect on January 25, 2010, it
13 reduced petitioner's ability to earn what Petitioner describes as
14 "85% time credit", which resulted in a change of his release date
15 from January 12, 2013, to October 10, 2013.  (Id. at 4, 25-26.)
16 Petitioner alleges that on April 10, 2009, before § 2933.6 took
17 effect, he was validated as a member of the Nazi Low Rider (NLR)
18 prison gang whose presence in the general population was found on
19 February 25, 2010, to pose a threat to the safety and security of
20 the prison.  (Id. at 16, 18, 25.)  A summary of the action taken
21 in February 2010 indicates that Petitioner's most recent gang
22 activity documented on California Department of Corrections and
23 Rehabilitation (CDCR) 128B-2 forms was not more than six years
24 old, so Petitioner's gang status was not referred for review.
25 (Id. at 25.)  As a result, Petitioner was assigned to the SHU on
26 or about April 1, 2009.  However, Petitioner declares that he is
27 not an associate of any gang, has not ever engaged in any gang
28 activity, and thus has no information to divulge.  (Id. at 28.)

He asserts that he had no knowledge of an unreliable note discovered in a prison hospital holding cell on February 25, 2009, which allegedly listed Petitioner as an active associate or member and was used to re-validate him as a gang associate, and he did not give anyone permission to use his name. (Id. at 28, 31.)

Petitioner alleges that he "presumably" has undergone review by a classification committee at least every 180 days for possible release to the general inmate population, where he could earn time credits; however, he was found to present a continuing threat; further, Petitioner alleges that six years without gang activity must pass before he could be released from the SHU pursuant to Cal. Code Regs., tit. 15, § 3341.5(c)(5). (Id. at 9.)

Petitioner filed petitions for habeas relief in the state courts, which were denied. The Kings County Superior Court (KCSC) reasoned that the conduct giving rise to the credit-earning limitation was not conduct occurring before the effective date of the provision, but rather was the continuing conduct of creating a threat to the safety and security of the institution, as documented by periodic review by a classification committee. (Id. at 16.)  Petitioner was proved to be a threat to the security of the prison by his association with a prison gang engaged in criminal conduct threatening the safety of others; if Petitioner were found not to present a continued threat to institutional security, he would be released to the general population and not be subject to the credit-earning limitations of § 2933.6(a).  Alternatively, Petitioner could refrain from

gang association or conduct for six years, or he could
voluntarily debrief from gang association.  Because Petitioner
had not done so, he effectively chose to be an active prison gang
member in prison and thus engaged in misbehavior.  (Id. at 20.)
The state court of appeal denied Petitioner's habeas petition
raising the ex post facto claim without prejudice to filing a new
petition in the event that the California Supreme Court
determined that the application of § 2933.6 to Petitioner's
circumstances constituted an ex post facto violation.  (Id. at
22.)  The California Supreme Court denied Petitioner's habeas
petition without a statement of reasons or citation of any
authority.  (Id. at 33.)

     Petitioner alleges the following claims in the petition:  1)
enactment of Cal. Pen. Code § 2933.6 and application of it to
Petitioner violated state and federal prohibitions against ex
post facto laws; and 2) the state courts misapplied the law and
made an unreasonable determination of the facts pursuant to
§ 2254(d)(2) in light of the evidence presented when they made
factual findings that conduct of Petitioner that post-dated
January 25, 2010, was to blame for his credit "loss."  (Id. at 4,
9-10.)

     III.  <u>State Law Claims</u>

     A district court may entertain a petition for a writ of
habeas corpus by a person in custody pursuant to the judgment of
a state court only on the ground that the custody is in violation
of the Constitution, laws, or treaties of the United States.  28
U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,
375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13,

16 (2010) (per curiam).  Federal habeas relief is not available

to retry a state issue that does not rise to the level of a

federal constitutional violation.  Wilson v. Corcoran, 562 U.S.

at 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Thus,

alleged errors in the application of state law are not cognizable

in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623

(9th Cir. 2002).  In a habeas proceeding, this Court is bound by

the California Supreme Court's interpretation of California law

unless it is determined that the interpretation is untenable or a

veiled attempt to avoid review of federal questions.  Murtishaw

v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication of an untenable interpretation

or any attempt to avoid review of federal questions.

In the first claim, Petitioner contends in part that the

application of § 2933.6 to him violates the state prohibition

against ex post facto laws.  In the second claim, Petitioner

alleges in part that the state courts misapplied the statute, a

contention that is based on a state court's application of state

law.  Petitioner thus bases parts of his first and second claims

on state law.  Insofar as Petitioner is alleging claims based on

state law, Petitioner has failed to state facts that point to a

real possibility of constitutional error.

The legal insufficiency of the claims is based not on a

dearth of factual allegations, but rather on the nature of the

claim as one premised upon state law.  Therefore, even if leave

to amend were granted, Petitioner could not state a tenable claim

for relief.

Accordingly, to the extent that Petitioner's claims are

9

based on state law provisions or an alleged error based solely on the application of state law, the petition will be dismissed without leave to amend.

      IV.  <u>Ex Post Facto Violation</u>

      Petitioner argues that applying to him the version of Cal. Pen. Code § 2933.6 that took effect on January 25, 2010, violates the prohibition of ex post facto laws because his gang validation occurred before the effective date of the revised statute.

      Effective January 25, 2010, Cal. Pen. Code § 2933.6 was amended to read in pertinent part as follows:

> 2933.6. (a) Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) or upon validation as a prison gang member or associate is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct.
> ....
> (c) This section does not apply if the administrative finding of the misconduct is overturned or if the person is criminally prosecuted for the misconduct and is found not guilty.

(2009-2010 Cal. Stats., 3rd Ex. Sess., ch. 28, § 44 [eff. Jan. 25, 2010].)

      The Constitution provides, "No State shall... pass any... ex post facto Law." U.S. Const. art I, § 10, cl. 1. The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters

the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. <u>Carmell v. Texas</u>, 529 U.S. 513, 522 (2000). The provision ensures fair warning of the effect of legislative acts and permits individuals to rely on the meaning of statutes until they are explicitly changed; it also restricts governmental power by restraining arbitrary and potentially vindictive legislation. <u>Weaver v. Graham</u>, 450 U.S. 24, 28-29 (1981). For a penal law to be ex post facto, it must be both disadvantageous to the offender, and it must be retrospective, that is, it must apply to events occurring before its enactment and change the legal consequences of acts completed before its effective date. <u>Id.</u> at 29, 31.

In <u>Weaver v. Graham</u>, 450 U.S. at 25-26, the state applied to the petitioner a state statute that was passed after the date of the petitioner's offense and that repealed an earlier statute that had stated that gain time credits "shall" be granted; thus, the new statute reduced the amount of gain time awarded for good conduct and obedience to prison rules. <u>Id.</u> at 25-26. The new enactment was applied to a petitioner whose crime predated it, and it was used to calculate the gain time available to the petitioner. Although other provisions permitted some discretionary gain time to be made up, under the old statute, the petitioner had been automatically entitled to the gain time simply for avoiding disciplinary infractions and performing assigned tasks. The new law thus attached legal consequences to a crime committed before it took effect. Further, regardless of whether the scheme for gain time was part of the original

1    sentence or not, it in fact determined to some extent the

2    petitioner's prison term and thus substantially and materially

3    altered the consequences attached to the crime.  Thus, it was

4    retrospective.  Id. at 32-33, 35-36.

5        Likewise, in Lynce v. Mathis, 519 U.S. 433 (1997), it was

6    held that application to the petitioner of a post-offense statute

7    that cancelled early release credits that were available based

8    solely on the growth of the state prison population violated the

9    Ex Post Facto Clause of the Constitution because the new statute

10   did not merely remove a mechanism that created an opportunity for

11   early release, but rather rendered ineligible for early release a

12   class of prisoners who were previously eligible for early

13   release.  The new statute may have affected the precise amount of

14   gain time the petitioner received, and thus it lengthened the

15   time the petitioner spent in prison.  Id. at 442-49.

16       Here, the post-offense statute affected the Petitioner's

17   opportunity to earn credits against his sentence.  However,

18   Petitioner has not shown that it deprived him of any credits

19   earned before the new statute took effect; rather, the credit

20   that was taken from Petitioner was credit that began to accrue

21   after January 25, 2010, the effective date of the statute.

22       Further, the new law did not change the legal consequences

23   of acts completed before its effective date.  Although

24   Petitioner's gang validation proceeding did occur before the

25   effective date of the new statute, it was nevertheless reasonable

26   for the state court to interpret the limitation on earning credit

27   as a consequence not of the gang validation, but rather of

28   Petitioner's own conduct of continuing to associate with a prison

                                   12

gang found to present a threat to institutional security.  Under
California law, an inmate's gang involvement is considered
current if there is any documented gang activity within the past
six (6) years, and an associate of a gang is a prisoner involved
periodically or regularly with members or associates of a gang;
further, regulations provide for procedures for the validation of
gang activity or association, and for periodic review of the
active or inactive status of gang members or associates.  Cal.
Code Regs., tit. 15, § 3378(c)-(h).  A validated prison gang
member or associate shall be considered for release from a SHU
after the inmate is verified as a gang dropout through a
debriefing process.  Cal. Code Regs., tit. 15, § 3341.5(c)(4).

In summary, the statute does not punish inmates for conduct
that was completed before the effective date of the statute;
thus, it is not retrospective.  Cf., Kansas v. Hendricks, 521
U.S. 346, 370-71 (1997) (holding that a state's statute for
committing sexually violent predators as applied to a person
whose criminal conduct predated the effective date of the statute
was not ex post facto in part because it was not retrospective
due to the fact that confinement was based on a determination of
the person's current mental condition and the resulting
likelihood of sexually violent conduct in the future, and not on
the commission of conduct predating the enactment).

Therefore, the Court concludes that the application of
§ 2933.6 to Petitioner to limit his earning credit after the
effective date of the statute was not a violation of the Ex Post
Facto Clause.  The state court decision denying Petitioner's ex
post facto claim and was not contrary to, or an unreasonable

13

1  application of, clearly established federal law.

2      V.   <u>Unreasonable Determination of Facts</u>

3      Petitioner contends that in connection with the ex post

4  facto claim, the state court made an unreasonable determination

5  of the facts pursuant to § 2254(d)(2) in light of the evidence

6  presented when it made factual findings that conduct of

7  Petitioner that post-dated January 25, 2010, was to blame for his

8  credit "loss."  (Pet. at 4, 9-10.)

9      Pursuant to § 2254(d)(2), a habeas petition may be granted

10 only if the state court's conclusion was an unreasonable

11 determination of the facts in light of the evidence presented in

12 the state court proceeding.  Section 2254(d)(2) applies to

13 challenges to state court findings based entirely on the state

14 court record or where the process of the state court is claimed

15 to have been defective.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001

16 (9th Cir. 2004).  Such challenges include claims that a finding

17 is unsupported by sufficient evidence, the state court's process

18 was defective, or the state court failed to make any finding at

19 all.  <u>Id.</u> at 999.

20     As with the determination made under § 2254(d)(1), the state

21 court's determination must be not merely incorrect or erroneous,

22 but rather objectively unreasonable.  <u>Id.</u>  For relief to be

23 granted, a federal habeas court must find that the trial court's

24 factual determination was such that a reasonable fact finder

25 could not have made the finding; that reasonable minds might

26 disagree with the determination or have a basis to question the

27 finding is not sufficient.  <u>Rice v. Collins</u>, 546 U.S. 333, 340-42

28 (2006).  To conclude that a state court finding is unsupported by

substantial evidence, the federal habeas court must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. <u>Taylor v. Maddox</u>, 366 F.3d at 1000. To determine that a state court's fact finding process is defective in some material way or non-existent, a federal habeas court must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact finding process was adequate. <u>Id.</u>

Here, the state court relied on the determination of the prison authorities that Petitioner was a gang member. This Court notes that the determination of Petitioner's gang association is not at issue in this proceeding, in which Petitioner challenges not the gang validation, but rather a statutory provision that regulates the credit-earning potential of persons housed in the SHU. Although Petitioner alleges that he has not ever been a gang member or associate, the record reflects that Petitioner was previously validated on February 9, 2009, as a member of the NLR prison gang; additional confidential information was received in March 2009 that updated Petitioner's status and validated his status as an associate of the NLR prison gang. (Pet. at 30.) There was no evidence that Petitioner had voluntarily debriefed from gang association or had refrained from gang association or conduct for six years. Likewise, there is no indication in the record that the gang validation had been invalidated. A reasonable fact finder could thus have concluded that Petitioner continued to associate with a prison gang that was engaged in conduct threatening the safety of others, and that Petitioner's

1  continuing conduct was therefore the basis of his housing status

2  and the attendant limitations on earning time credit.  Although

3  Petitioner may allege that he did not engage in the continuing

4  association with the NLR gang, a reasonable appellate panel

5  applying normal standards of appellate review could reasonably

6  conclude that the gang validation and the finding of a continuing

7  threat to institutional security were supported by the record.

8       Accordingly, the Court concludes that the state court's

9  adjudication of Petitioner's claim did not result in a decision

10 that was based on an unreasonable determination of the facts in

11 light of the evidence presented in the state court proceeding.

12      In summary, Petitioner has not alleged facts warranting

13 relief in a proceeding pursuant to 28 U.S.C. § 2254.  It appears

14 that Petitioner has submitted complete documentation of the

15 proceedings concerning his housing and credit-earning status.

16 Thus, it does not appear that if leave to amend were granted,

17 Petitioner could state a tenable ex post facto claim based on the

18 state court's application of § 2933.6 or an unreasonable

19 determination of the facts.  Accordingly, the petition will be

20 dismissed without leave to amend.

21      VI.  Certificate of Appealability

22      Unless a circuit justice or judge issues a certificate of

23 appealability, an appeal may not be taken to the Court of Appeals

24 from the final order in a habeas proceeding in which the

25 detention complained of arises out of process issued by a state

26 court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

27 U.S. 322, 336 (2003).  A certificate of appealability may issue

28 only if the applicant makes a substantial showing of the denial

1  of a constitutional right.  § 2253(c)(2).  Under this standard, a
2  petitioner must show that reasonable jurists could debate whether
3  the petition should have been resolved in a different manner or
4  that the issues presented were adequate to deserve encouragement
5  to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336
6  (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A
7  certificate should issue if the Petitioner shows that jurists of
8  reason would find it debatable whether the petition states a
9  valid claim of the denial of a constitutional right and that
10 jurists of reason would find it debatable whether the district
11 court was correct in any procedural ruling.  Slack v. McDaniel,
12 529 U.S. 473, 483-84 (2000).

13       In determining this issue, a court conducts an overview of
14 the claims in the habeas petition, generally assesses their
15 merits, and determines whether the resolution was debatable among
16 jurists of reason or wrong.  Id.  It is necessary for an
17 applicant to show more than an absence of frivolity or the
18 existence of mere good faith; however, it is not necessary for an
19 applicant to show that the appeal will succeed.  Miller-El v.
20 Cockrell, 537 U.S. at 338.

21       A district court must issue or deny a certificate of
22 appealability when it enters a final order adverse to the
23 applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

24       Here, it does not appear that reasonable jurists could
25 debate whether the petition should have been resolved in a
26 different manner.  Petitioner has not made a substantial showing
27 of the denial of a constitutional right.

28

1    Accordingly, the Court will decline to issue a certificate

2  of appealability.

3    VII.  <u>Disposition</u>

4    Accordingly, it is ORDERED that:

5    1) The petition for writ of habeas corpus is DISMISSED

6  without leave to amend; and

7    2)  The Court DECLINES to issue a certificate of

8  appealablity; and

9    3)  The Clerk is DIRECTED to close the action.

10    IT IS SO ORDERED.

11  **Dated:**   **September 10, 2012**          **/s/ Barbara A. McAuliffe**

12                                          UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28